UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSE ALTAGRACIA FRANCO
DE LA CRUZ,

                             Petitioner,                 DECISION AND ORDER

-vs-

                                           25-CV-6699-MAV

PHILIP RHONEY, in his official capacity
As Deputy Field Office Director, Buffalo
Field Office, U.S. Immigration & Customs
Enforcement, et al.,

                           Respondents.

## INTRODUCTION

Petitioner Jose Altagracia Franco De La Cruz, a citizen of Dominican Republic, entered the United States without inspection in September 2022 by crossing the southern border. He was thereafter encountered, detained, and paroled into the United States by immigration officials. Following expiration of his parole, Petitioner remained at liberty in the United States for nearly two years before he was re-detained by U.S. Immigration and Customs Enforcement ("ICE") in Utica, New York.

While detained at the Buffalo Federal Detention Facility, Petitioner commenced this action on November 21, 2025, pursuant to 28 U.S.C. § 2241, arguing that his continued detention without a bond hearing violates the Immigration and Nationality Act and associated regulations, as well as his due process rights under the Constitution. Respondents filed a motion to dismiss the petition. ECF No. 5. The Court held a virtual hearing on February 27, 2026. ECF No. 12. Following the

1

hearing, the Court issued a text order denying Respondents' motion to dismiss and granting Petitioner's application for habeas relief to the extent that Respondents were directed to hold a bond hearing for Petitioner before an Immigration Judge. ECF No. 15.[1] The present decision and order memorializes the Court's reasoning.

## BACKGROUND[2]

Petitioner Jose Altagracia Franco De La Cruz entered the United States without inspection by crossing the southern border on September 26, 2022. ECF No. 4 at 3.[3] Shortly thereafter, the U.S. Department of Homeland Security ("DHS") apprehended Petitioner and served him with a Notice and Order of Expedited Removal, pursuant to Section 235(b)(1) of the Immigration and Nationality Act ("INA"). DHS subsequently vacated the order of expedited removal after an asylum officer found that Petitioner demonstrated a credible fear of persecution or torture. ECF Nos. 4 at 3; 13 at 1.

DHS transferred Petitioner to regular removal proceedings on November 13, 2022, by serving him with a Notice to Appear, which classified him as "an alien present in the United States who has not been admitted or paroled" and, notably, not an arriving alien. DHS charged him with removability under INA §§ 212(a)(6)(A)(i) ("alien present in the United States without being admitted or paroled . . . .") and

---

[1] In accordance with the Court's text order, Petitioner received a bond hearing on March 5, 2026, and was ordered released upon payment of bond in the amount of $6,500. ECF No. 16.

[2] The background facts are drawn from the petition and the following documents: a Notice to Appear, Forms I-213 and I-862; a Notice of Custody Determination; an Interim Notice Authorizing Parole, and a Notice and Order of Expedited Removal. ECF Nos. 1, 4 at 3–8, 13, 14. *See e.g, Dent v. Holder*, 627 F.3d 365, 371 (9th Cir. 2010) (taking judicial notice of the existence of documents in an alien's "A-file" on the basis that "they are official agency records").

[3] Unless otherwise indicated, the page references herein correspond to those generated by the Court's CM/ECF system.

212(a)(7)(A)(i)(I) (immigrant who, at the time of application for admission, is not in possession of the requisite documentation). *Id.*

DHS released Petitioner on November 16, 2022, pursuant to "authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations." ECF No. 4 at 8. The following day, DHS notified Petitioner that he was being paroled under section 212(d)(5)(A) of the INA. *Id.* Petitioner's parole "[was] valid for one year beginning from the date on [the] notice" and "automatically terminate[d] upon [Petitioner's] departure or removal from the United States or at the end of the one-year period unless ICE provide[d] [Petitioner] with an extension at its discretion." *Id.*

Petitioner's parole expired on November 17, 2023. He remained at liberty in the United States for nearly 2 years, before being re-detained by ICE on September 17, 2025, during a traffic stop in Utica, New York. ECF Nos. 1 ¶ 1; 14 at 6.

## LEGAL STANDARD

28 U.S.C. § 2241(c)(3) authorizes federal courts to grant habeas relief to prisoners or detainees who are "in custody in violation of the Constitution or laws or treaties of the United States." Federal courts retain jurisdiction under § 2241 to review purely legal statutory and constitutional claims regarding the government's detention authority, but jurisdiction does not extend to "discretionary judgment," "action," or "decision" by the Attorney General with respect to either detention or removal.[4] *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (citing, *inter alia, Demore*

---

[4] For instance, 8 U.S.C. § 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review." Additionally, judicial review of removal orders is available only through filing a "petition for review" in a Circuit Court pursuant to 8 U.S.C. § 1252.

*v. Kim*, 538 U.S. 510, 516–17 (2003)).

A motion to dismiss in the habeas context is reviewed under the same standard as a motion to dismiss in a civil complaint. *Da Cunha v. Freden*, No. 25-CV-6532-MAV, 2025 WL 3280575, at *1 (W.D.N.Y. Nov. 25, 2025). To survive a motion to dismiss under Rule 12(b)(6), the petition "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In ruling on a motion to dismiss, even in a habeas context, a court "'may consider all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken.'" *Tripathy v. Schneider*, 473 F. Supp. 3d 220, 226 (W.D.N.Y. 2020) (quoting *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)).

## DISCUSSION

In his petition, Petitioner alleges that he is being unlawfully detained without a bond hearing under 8 U.S.C. § 1225(b)(2), during the pendency of his removal proceedings. ECF No. 1 ¶¶ 42-45. Petitioner contends that § 1225(b)(2) applies only to recent arrivals seeking admission to the United States and not to persons such as him, who have resided in the United States for years prior to apprehension by immigration officials. *Id.* ¶¶ 16, 44. For such noncitizens, Petitioner maintains that the proper detention authority is § 1226(a), which allows for release on bond. *Id.* ¶¶ 15, 44. Petitioner requests his immediate release unless Respondents provide him with a bond hearing during which Respondents bear the burden of demonstrating by

4

clear and convincing evidence that he is a danger to the community or a flight risk.

Respondents counter that the Court lacks jurisdiction to entertain the petition pursuant to 8 U.S.C. §§ 1252(g) and 1252(b)(9) and, even if it has jurisdiction, Petitioner is properly subject to mandatory detention under 8 U.S.C. § 1225(b)(1) as an "arriving alien" or a "certain other alien." ECF No. 5-1 at 4–12; *see also* ECF No. 4 at 1. Furthermore, Respondents maintain that Petitioner is properly detained subject to the "legal fiction" doctrine, under which a noncitizen on parole is treated as if stopped at the border for legal purposes. ECF No. 5-1 at 8–9.

For the reasons stated below, the Court finds that it has jurisdiction over the petition, the "legal fiction" doctrine does not apply, and Petitioner is detained pursuant to § 1226(a), entitling him to a bond hearing under the applicable regulations.

## I. Jurisdictional Arguments

As indicated above, Respondents contend that the Court does not have jurisdiction to entertain the petition pursuant to 8 U.S.C. §§ 1252(g) and 1252(b)(9).

### A. 8 U.S.C. § 1252(g)

According to Respondents, § 1252(g) bars jurisdiction over any claim "*arising from* the decision or action by the [Secretary of Homeland Security] *to commence proceedings*[,]" which necessarily includes "the decision to detain an alien pending such removal proceedings[.]" ECF No. 5-1 at 4 (emphasis in original). Because Petitioner is challenging the legality of his detention, Respondents maintain that § 1252(g) bars the Court from considering the petition. The Court rejects this

argument.

Section 1252(g) prohibits courts from "hear[ing] any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General [or Secretary of Homeland Security] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." As the Supreme Court and the Second Circuit have explained, § 1252(g)'s bar on jurisdiction is "'narrow[ ][,]'" and is "cabined 'to three discrete actions': a decision 'to *commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ozturk v. Hyde*, 136 F.4th 382, 396–97 (2d Cir. 2025) (quoting *Reno v. Am.-Arab Anti-Discrimination Comm. ("AADC")*, 525 U.S. 471, 482 (1999)) (emphasis in *Ozturk* and *AADC*). Section 1252(g) is directed "'against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion.'" *Ozturk*, 136 F.4th at 396 (quoting *AADC*, 525 U.S. at 485 n. 9). "There are 'many other decisions or actions that may be part of the deportation process' but that do not fall within the three discrete exercises of 'prosecutorial discretion' covered by § 1252(g)." *Ozturk*, 136 F.4th at 397 (quoting *AADC*, 525 U.S. at 482, 489).

Here, Petitioner does not challenge Respondents' decision to commence proceedings, adjudicate his case, or execute a removal order. Rather, Petitioner is challenging the legality of his detention during the pendency of his removal proceeding. Petitioner's claims of unlawful detention are thus "independent of, and collateral to, the removal process." *Ozturk*, 136 F.4th at 397-98. Because Petitioner's unlawful detention claims "may be resolved without affecting pending [removal] proceedings, they do not arise from the three discrete exercises of prosecutorial

discretion that are shielded by § 1252(g)." *Id.* at 398 (internal quotation marks and citations omitted). Accordingly, § 1252(g) does not foreclose judicial review of Petitioner's claims of unlawful detention. *See id.* at 397 ("Section 1252(g) does not preclude jurisdiction over the challenges to the legality of [a noncitizen's] detention.") (internal quotation marks and citations omitted); *Liego v. Freden,* No. 25-CV-6615-EAW, 2025 WL 3290694, at *2–3 (W.D.N.Y. Nov. 26, 2025) (finding § 1252(g) does not bar petitioner's challenge to the legality of his detention); *Prado v. Perez,* 451 F. Supp. 3d 306, 312 (S.D.N.Y. 2020) ("[C]ourts in this district have found that there is no deprivation of jurisdiction to hear claims arising from unlawful arrest or detention, because those claims are too distinct to be said to 'arise from' the commencement of removal proceedings.").

### B. 8 U.S.C. § 1252(b)(9)

Section 1252(b)(9) states as follows:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

Relying on this provision, Respondents argue that taken together with § 1252(a)(5) (stating that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal . . ."), means that "*any* issue—whether legal or factual—arising from *any* removal-related activity

can be reviewed *only*" in a court of appeals. ECF No. 5-1 at 5–6 (quoting *J.E.F.M. v. Lynch,* 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis in *J.E.F.M.*)). Because Petitioner is challenging the decision to detain him and because detention arises from the government's decision to commence removal proceedings, Respondents maintain that detention is thus an "action taken . . . to remove [him] from the United States[,]" and the Court's consideration of Petitioner's challenge is barred by § 1252(b)(9). The Court disagrees.

As a threshold matter, the very text of § 1252(b) sets out requirements only "[w]ith respect to review of an order of removal under subsection (a)(1)." § 1252(b); *Ozturk,* 136 F.4th at 399. No such order of removal is at issue here. In any event, the Supreme Court has rejected the proposed approach, holding that "§ 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for a review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of California,* 591 U.S. 1, 19 (2020) (cleaned up) (quoting *Jennings,* 583 U.S. at 294–95).

Here, Petitioner is challenging the legality of his detention under the INA and the Due Process Clause of the Constitution. "[E]ven if [Petitioner's] claims have a relationship to pending removal proceedings, [his] claims do not themselves challenge removal proceedings, and thus § 1252(b)(9)'s channeling function has no role to play." *Ozturk,* 136 F.4th at 399 (internal quotation marks and citations omitted); *see also Mukantagara v. U.S. Dep't of Homeland Sec.,* 67 F.4th 1113, 1116 (10th Cir. 2023) ("A claim only arises from a removal proceeding when the parties in fact are

challenging removal proceedings."); *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020) ("[C]laims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process."). Because Petitioner is challenging the legality of his detention only, and these contentions are "distinct from the merits of his removability," *Aguilar v. English et al.*, No. 3:25-CV-898 DRL-SJF, 2025 WL 3280219, at *5 (N.D. Ind. Nov. 25, 2025), the Court concludes that § 1252(b)(9) does not operate as a jurisdictional bar to Petitioner's claims. *See Liego*, 2025 WL 3290694, at *4 (collecting cases).

## II. Relevant Statutory Framework

### A. Mandatory Detention Pursuant to § 1225(b)(1)

8 U.S.C. § 1225 enumerates the procedures by which the government must mandatorily detain certain "applicants for admission" into the United States. An "applicant for admission" is defined as an "alien present in the United States who has not been admitted or who arrives in the United States . . . ." 8 U.S.C. § 1225(a)(1). "Admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by the immigration officer." 8 U.S.C. § 1101(a)(13)(A).

Section 1225(b) requires mandatory detention for two specific groups of "applicants for admission." § 1225(b)(1), (2). As relevant here, § 1225(b)(1) is titled, "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." It governs the expedited removal of noncitizens who are (1) "arriving in the United States" pursuant to § 1225(b)(1)(A)(i) or are "certain other aliens" pursuant to § 1225(b)(1)(A)(iii) and (2) who are "inadmissible" to the

9

United States due to fraud, misrepresentation, or lack of valid documentation. § 1225(b)(1)(A)(i) (citing § 1182(a)(6)(C), (a)(7)).

Noncitizens who are inadmissible under § 1225(b)(1) are normally ordered removed "without further hearing or review" unless he or she "indicates either an intention to apply for asylum . . . or a fear of persecution." § 1225(b)(1)(A)(i). If the person indicates either an intention to apply for asylum or a fear of persecution, the person is referred for an asylum interview. § 1225(b)(1)(A)(ii). If the asylum officer determines at the time of the interview that the person has a credible fear of persecution, he or she "shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). If the asylum officer determines that an alien does not have a credible fear of persecution, he or she may seek review of the determination by an immigration judge and shall be detained "pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." § 1225(b)(1)(B)(iii)(III), (IV).

## B. Discretionary Detention Pursuant to Section 1226(a)[5]

Contrary to the language of § 1225(b), § 1226(a) does not specify a class or classes of aliens who must be detained under the provision. Instead, it governs more generally the "apprehension and detention of aliens." The Supreme Court has characterized § 1226(a) as "authoriz[ing] the government to detain certain aliens *already in the country* pending the outcome of removal proceedings[.]" *Jennings*, 583

---

[5] Section 1226 distinguishes between two different categories of detention — discretionary detention under § 1226(a) and mandatory detention under § 1226(c). This decision and order only discusses discretionary detention under § 1226(a).

U.S. at 289 (emphasis added).

Section 1226(a) establishes "a discretionary detention framework," *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025), and provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
> > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> >
> > (B) conditional parole; but
>
> (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

## C. Parole Pursuant to Section 1182(d)(5)(A)

Section 1182(d)(5)(A) authorizes the Secretary of Homeland Security to, "in his discretion parole into the United States temporarily . . . on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States . . . ." The section further provides:

> when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

Section 1182(d)(5)(A) parole is not "an admission of the alien." § 1182(d)(5)(A);

§ 1101(B) ("An alien who is paroled under section 1182(d)(5) . . . shall not be considered to have been admitted."). Nevertheless, the parolee's "physical presence within the United States cannot be said to be unlawful or illegal" since the parole is authorized by the Attorney General. *United States v. Balde*, 943 F.3d 73, 84 (2d Cir. 2019). Indeed, "parole has long been understood to constitute lawful status." *Id.* The Supreme Court has confirmed that "nothing in this text [of Section 1182(d)(5)(A)] . . . affirmatively authorizes detention," so the statute is not an independent authority to detain parolees following the expiration of parole. *Clark v. Martinez*, 543 U.S. 371, 385 (2005).

## III. Analysis

### A. Petitioner is not detained under Section 1225(b)(1)

Petitioner is neither an "arriving alien" under 8 U.S.C. § 1225(b)(1)(A)(i) nor a "certain other alien" under 8 U.S.C. § 1225(b)(1)(A)(iii), as Petitioner resided in the United States for almost two years following expiration of his parole. Accordingly, § 1225(b)(1) does not authorize his detention.

### i. Section 1225(b)(1)(A)(i) – arriving alien provision

As stated above, § 1225(b)(1) imposes expedited removal and mandatory detention on any "alien . . . who is arriving in the United States" and who is inadmissible due to lack of entry documents, fraud, or misrepresentation. § 1225(b)(1)(A)(i). The INA does not define "arriving." The Court is thus tasked with interpreting this statutory term to determine whether Petitioner is an "arriving" alien under this provision.

12

"Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985). Thus, the Court's "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (citing, *inter alia, Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 477 (1992)).

"When a term is not defined by statute, courts may 'look to its ordinary meaning found in contemporary dictionary definitions,' that is, in dictionaries that were available when the statute was enacted." *Nero v. Uphold HQ Inc.*, 688 F. Supp. 3d 134, 139–40 (S.D.N.Y. 2023) (quoting *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023)). Section 1225(b) in its present form was passed into law in 1996. *See* Pub.L. 104-208, Div. C, Title III, § 302(a) (Sept. 30, 1996). That same year, Webster's Dictionary included the following relevant definitions of the term "arrive"

> 1. to come to a certain point in the course of travel; reach one's destination . . . 2. to come . . . 3. to attain a position of success

*Arrive*, WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE (1996), available at https://archive.org/ (last accessed Feb. 12, 2026). Moreover, § 1225(b)(1)(A)(i) uses the verb "arrive" in the present progressive tense ("alien . . . who is arriving in the United States"), denoting present

and continuing action. *See Lopez Benitez*, 795 F. Supp. 3d at 488 ("'The use of the present progressive, like use of the present participle, denotes an ongoing process.'") (quoting *Matter of M-D-C-V-*, 281 I. & N. Dec. 18, 23 (B.I.A. 2020). The Court also observes that nothing in § 1225 suggests "arriving" is a term of art in the clause. Rather, "[t]he words 'arriving,' 'arrival,' and 'arrive' in Section 1225 appear to refer to a process that occurs upon physical entry into the United States, 'not an interminable . . . status' that attaches to a noncitizen upon arrival." *Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *6 (S.D.N.Y. Dec. 17, 2025) (quoting *Rodriguez-Acurio v. Almodovar*, No. 2:25-CV-6065 (NJC), 2025 WL 3314420, at *20 (E.D.N.Y. Nov. 28, 2025)).

Applying this plain meaning to the instant case, Petitioner was no longer in the process of arriving in the country at the time of his re-arrest; he had already arrived. In fact, Petitioner had been residing at liberty in the United States for nearly two years following expiration of his parole at the time of his re-arrest. Because Petitioner had in fact arrived in the country, he cannot be classified as "an alien . . . who is arriving in the United States." *See Rodriguez-Acurio*, 2025 WL 3314420, at *21 ("Indeed, it would be illogical to find that [the petitioner] is still in the process of 'arriving' in the United States when she has been continuously residing in the United States for more than three years after the expiration of her humanitarian parole . . . ."); *see also Qasemi*, 2025 WL 3654098, at *6 ("Applying the plain meaning of 'arriving in the United States' here, there can be no doubt that upon his parole into the interior of the country, [the petitioner] had arrived in the United States and was no longer a

noncitizen arriving in the United States.").

The Court's decision is not changed by Respondents' reference to the definition of "[a]rriving alien" as set forth in 8 C.F.R. § 1001.1(q), which provides:

> The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, *and even after any such parole is terminated or revoked.* However, an arriving alien who was paroled into the United States before April 1, 1997, or who was paroled into the United States on or after April 1, 1997, pursuant to a grant of advance parole which the alien applied for and obtained in the United States prior to the alien's departure from and return to the United States, will not be treated, solely by reason of that grant of parole, as an arriving alien under section 235(b)(1)(A)(i) of the Act.

(emphasis added).

The Court need not simply adopt this agency interpretation. Courts may "seek aid from the interpretations of those responsible for implementing particular statutes[.]" but they "must exercise independent judgment in determining the meaning of statutory provisions." *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) (emphasizing "the traditional understanding of the judicial function, under which courts must exercise independent judgment in determining the meaning of statutory provisions."). In exercising its independent judgment, the Court notes that neither the Supreme Court nor the Second Circuit has considered the meaning of the phrase "alien . . . who is arriving in the United States" under § 1225(b)(1)(A)(i) since *Loper Bright*. The Court declines to apply the definition of "arriving alien" under

15

8 C.F.R. § 1001.1(q), specifically as it pertains to an alien after parole has been terminated or revoked, because it runs counter to the clear and unambiguous statutory language, as discussed above. *See Qasemi*, 2025 WL 3654098, at *6–8 (declining to defer to 8 C.F.R. § 1.2 and interpreting § 1225(b)(1)(A)(i) according to its plain language); *Rodriguez-Acurio*, 2025 WL 3314420, at *19–22 (same); *see, e.g.,* *Vasquez-Rosario v. Noem*, No. 25-CV-7427, 2026 WL 196505, at *8–9 (E.D. Pa. Jan. 26, 2026) (same); *Montiel v. Raycraft*, No. 1:25-CV-1610, 2026 WL 32076, at *3 (W.D. Mich. Jan. 6, 2026) (same).

### ii. Section 1225(b)(1)(A)(iii) – "certain other aliens" provision

Section 1225(b)(1) also imposes expedited removal and mandatory detention on any "alien . . . who . . .is described in clause (iii)," which applies to "certain other aliens," and who is inadmissible due to lack of entry documents, fraud, or misrepresentation. § 1225(b)(1)(A)(i). The "certain other aliens" provision of § 1225(b)(1)(A)(iii), also referred herein as the "Designation Provision," provides that the Attorney General may designate as eligible for expedited removal and mandatory detention any

> *alien* who is not described in subparagraph (F), *who has not been admitted or paroled into the United States*, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

§ 1225(b)(1)(A)(iii)(II) (emphasis added). The critical question is how to interpret the language "alien . . . who has not been admitted or paroled into the United States[.]" In other words, the Court must consider whether Petitioner's prior parole precludes

16

him from being considered a "certain other alien." The Court finds that it does.

As always, the Court begins with the language employed by Congress. The Court understands the phrase "alien . . . who has not been admitted or paroled into the United States[ ]" to mean that once a noncitizen has been admitted or paroled into the country, the government's authority to detain that person as a "certain other alien" has ended. Removing the negative, the statute states that if a noncitizen has *either* been "admitted or paroled" or has been continuously in the United States for "a two-year period prior to a determination of inadmissibility," the noncitizen is not subject to expedited removal and the accompanying mandatory detention regime of Section 1225(b)(1). The Court finds persuasive the numerous other district courts that have reached this same conclusion. *See, e.g., Vasquez-Rosario v. Noem*, No. 25-CV-7427, 2026 WL 196505, at *7 (E.D. Pa. Jan. 26, 2026) (collecting cases holding that "the Designation Provision forbids the expedited removal of noncitizens who have been, at any point in time, paroled into the United States."); *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 89 (D.D.C. 2025) ("[T]he Designation Provision does not authorize designation for expedited removal of any noncitizen who has, at any point in time, been paroled into the United States[.]").

In further support of this understanding, the Court looks to the adjacent statutory term "admitted," which means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Thus, "admitted" refers to a manner of entry into the country, which either did or did not occur. *See Qasemi*, 2025 WL 3654098, at *9 (explaining that

17

"'admitted' . . . refers only to a historical fact and manner of entry"). Since "paroled" is used alongside "admitted," it too likely refers "to the event of entry into the United States . . . which either did or did not occur." *Qasemi*, 2025 WL 3654098, at *9 (internal quotation marks and citation omitted). Because Petitioner was paroled into the country, he cannot be considered a "certain other alien."

In summary, because Petitioner was re-detained after being present in the United States for nearly two years following expiration of parole, he cannot be an "alien . . . who is arriving in the United States" or a "certain other alien" under the plain and unambiguous language of § 1225(b)(1).[6,7]

## B. The "Legal Fiction" of Parole

Despite not being "an alien . . . who is arriving" or a "certain other alien" under § 1225(b)(1), Respondents contend that Petitioner is nevertheless akin to an "arriving alien" by virtue of the "legal fiction" of his parole. ECF No. 9 at 3 ("[Petitioner was] only allowed to enter the United States for the limited purpose of parole, and, for legal purposes, is deemed to remain at the border."). *See Henderson v. I.N.S.*, 157 F.3d 106, 111 n. 5 (2d Cir. 1998) (explaining that noncitizens "physically paroled into the

---

[6] Respondents have cabined their arguments in this case to § 1225(b)(1). *See* ECF No. 4 at 1 ("[Petitioner] is detained pursuant to § 1225(b)(1) and not § 1225(b)(2) . . . ."). To the extent Respondents were insinuating at oral argument that § 1225(b)(2) also authorizes Petitioner's detention, the Court disagrees. Petitioner was not actively seeking admission at the time of his re-detention. *See Mahmodi v. Marich*, No. 25-CV-6762-MAV, 2026 WL 113473 at *2–3 (W.D.N.Y. Jan. 15, 2026) (finding § 1225(b)(2) inapplicable to petitioners who had been living and working in the United States since 2024 and had not been actively "seeking admission" at the time of their arrest by immigration officers)

[7] Because the Court finds that Petitioner's detention is not authorized under § 1225(b)(1), the Court rejects Respondents' brief and undeveloped argument in their reply brief that "[Petitioner's] immigration status reverts back" to § 1225(b)(1) by virtue of the plain language of 8 U.S.C. § 1182(d)(5)(A). *See* ECF No. 9 at 2.

country . . . remain[ ] for immigration purposes at the border" through a "legal fiction[.]").

The Court recognizes the well-established proposition that noncitizens on parole remain at the border for due process purposes. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) ("[A]liens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'") (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953) ("*Mezei*")). While some of the cases cited by Respondents support the proposition that the "legal fiction" applies to noncitizens who are on parole, none of their cases address whether the "legal fiction" extends to noncitizens who are present in the United States for some period of time after their parole expires, which is the precise issue before the Court.

For example, Respondents cite *Leng May Ma v. Barber*, 357 U.S. 185 (1958), which addressed whether a noncitizen on parole was entitled to relief under § 243(h) of the INA, a section that authorized the Attorney General "to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to physical persec[u]tion." *Id.* at 185–86. The Supreme Court rejected the petitioner's argument that she was "within the United States" and covered by § 243(h) because of her physical presence in the United States as a parolee, explaining that parole "is simply a device through which needless confinement is avoided while administrative proceedings are conducted" and does not "affect an alien's status." *Id.* at 190. The petitioner in *Leng May Ma* was on parole at the time

of the adverse decision under § 243(h) and was considered to be "on the threshold of initial entry" under immigration law. *See id.* at 187. In contrast, Petitioner here was not on parole at the time of his re-apprehension by immigration officials, as his parole had already expired.

Additionally, the Court finds inapposite the line of cases cited by Respondents that address a noncitizen's right to enter the United States. In *Mezei*, the petitioner had lived in the country for nearly 25 years and was detained upon re-entering the country. 345 U.S. at 208. Because the petitioner had been stopped at the border, the Supreme Court reasoned that he was "an alien on the threshold initial entry" and was entitled from a due process perspective to only those procedures that were authorized by Congress, *id.* at 212, a principle reaffirmed by the Supreme Court in *Thuraissigiam*.[8] The *Mezei* court "[had] no difficulty in holding [the petitioner was] an entrant alien or assimilated to (that) status for constitutional purposes" and that his continued exclusion did not deprive him of any statutory or constitutional right. 345 at 214–16. Unlike *Mezei*, however, Petitioner here was not detained upon re-entering the country. Rather, he was allowed to enter the country after an initial encounter and was re-detained inside of the country following expiration of parole. Accordingly, *Mezei* does not help the Court decide whether the "legal fiction" extends beyond the period of parole authorization.

After thoroughly reviewing the binding authority regarding the "legal fiction"

---

[8] *Thuraissigiam* involved a habeas petition commenced by a noncitizen challenging the determination that he did not possess a credible fear. *See* 591 U.S. at 114–15. The petitioner had been stopped after making it 25 yards into the country before he was apprehended and was never released from custody, parole or otherwise. *See id.* at 115.

of parole, the Court finds that it applies while parole is ongoing but ends at some point after the expiration or termination of parole. The Court need not answer when the "legal fiction" ends to resolve the instant case, as it certainly does not extend to noncitizens, such as Petitioner, who were detained nearly two years after expiration of their parole. *See Ivonin v. Rhoney*, No. 6:25-CV-06673-EAW, 2026 WL 199283, at *4 (W.D.N.Y. Jan. 26, 2026) ("[S]uggesting that [the petitioner] is still on the threshold of entry into this country, based on his re-entry into the United States through parole which expired over seven years ago, stretches the 'legal fiction' beyond reason."); *Cabrera Martinez*, 2025 WL 3771228, at *6–*8 (finding the "legal fiction" inapplicable to a noncitizen who had been residing in the United States for seven months following expiration of parole at the time detention); *Campbell v. Almodovar*, No. 1:25-cv-09509 (JLR), 2025 WL 3538351, at *8 (S.D.N.Y. Dec. 10, 2025) (same as to a noncitizen who had been living in the United States for years following expiration of parole)

### C. Petitioner is detained under Section 1226(a)

The Court concludes that a person who has stayed years beyond the expiration of his or her term of parole is no different than any other noncitizen who entered without inspection and was detained while unlawfully present in the country and not seeking admission. As to this latter person, the Court has already concluded that §1226(a) governs their detention. *See Da Cunha*, 2025 WL 3280575, at *6. As such, Petitioner is subject to discretionary detention under § 1226(a) and is entitled to a bond hearing "at the outset of detention" as established by existing federal

regulations. *See Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *Da Cunha*, 2025 WL 3280575, at *7.

## CONCLUSION

Accordingly, as indicated in the Court's text order, Respondents' motion to dismiss [ECF No. 5] is DENIED; and Petitioner's application for habeas relief [ECF No. 1] is GRANTED to the that the Court finds he is detained under 8 U.S.C. § 1226(a) and is therefore entitled to a bond hearing under the relevant regulations.

In its prior text order, the Court ORDERED that Respondents hold a bond hearing for Petitioner within ten (10) days of the date of this order. ECF No. 15. The hearing was held on March 5, 2026, during which Petitioner was released on bond in the amount of $6,500. ECF No. 16.

On March 20, 2026, the Court directed that any remaining objections be filed by the parties. Having received no objections, the Court dismisses any remaining claims in the petition without prejudice.

The Clerk of Court is directed to enter judgment in favor of Petitioner and close this case.

SO ORDERED.

DATED:    April 1, 2026
          Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge

22